**Case No. 16-cv-62958-BLOOM/Valle**

JIMMY R. SANCHEZ, JR.,

Plaintiff,

v.

CITY OF PEMBROKE PINES, FLORIDA,

Defendant.

_____/

## OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGMENT, MOTION FOR JUDGMENT ON THE PLEADINGS, AND MOTION TO STRIKE

**THIS CAUSE** is before the Court upon several motions filed by both parties, all of which are ripe for decision. Plaintiff Jimmy R. Sanchez ("Sanchez" or "Plaintiff") filed his operative Second Amended Complaint on March 20, 2017. ECF No. [30]. Defendant City of Pembroke Pines, Florida (the "City" or "Defendant") answered on April 3, 2017, and the parties completed discovery on August 25, 2017. On August 17, 2017, Plaintiff filed his Motion for Judgement on the Pleadings, ECF No. [48]. Defendant opposed the motion on August 29, 2017, ECF No. [49], and Plaintiff filed a reply on September 5, 2017, ECF No. [53].

Also on September 5, 2017, both the City and Sanchez filed Motions for Summary Judgment and accompanying Statements of Material Facts, ECF Nos. [50]–[55]. Pursuant to an extension granted by the Court, both parties filed oppositions to summary judgment on October 4, 2017, along with opposing statements of material fact, ECF Nos. [59]–[62]. The parties filed replies on October 11, 2017, ECF Nos. [64] & [65].

On October 11, 2017, the City also filed a Motion to Strike, ECF No. [63], requesting that

the Court strike certain portions of Plaintiff's Declaration, ECF No. [62–1], filed in Opposition to the City's Motion for Summary Judgment. The Court expedited briefing on the Motion to Strike, and Plaintiff filed an opposing brief on October 20, 2017, ECF No. [67]. All motions are now ripe for review.

## I. Motion for Judgment on the Pleadings

### A. Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate if there are no material facts in dispute. *See Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1303 (11th Cir. 2005); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1291 (11th Cir. 2002). Thus, Rule 12(c) "provides a means of disposing of cases when . . . a judgment on the merits can be achieved by focusing on the content of competing pleadings. . . ." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014) (citing 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 (3d ed. 2004)) (internal quotation marks omitted).

To determine if a plaintiff is entitled to judgment on the pleadings, the Court "accept(s) as true all material facts alleged in the non-moving party's pleading, and [] view[s] those facts in the light most favorable to the non-moving party." *Perez*, 774 F.3d at 1335 (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir.1998)). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Id.* (citing *Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir. 1956)).

### B. Analysis

Plaintiff moves for judgment on the pleadings arguing that "[b]ased on the admissions made [in Defendant's Answer and Affirmative Defenses], there is no genuine dispute of material fact that Plaintiff has established each element of his *prima facie* claim for unlawful retaliation due to the 'FMLA' and [d]iscrimination due to the 'ADA.'" ECF No. [48] ¶ 3. Plaintiff further argues that because Defendant has failed to "plead or adequately demonstrate any good faith defense for the failure to rehire Plaintiff," Plaintiff is entitled to liquidated damages. *Id.* ¶ 4. In response, Defendant argues that the statements Plaintiff claims are admissions are not admissions at all. ECF No. 49 ¶ 7. Rather, there remain significant issues of fact regarding both the retaliation claim under the FMLA and the discrimination claim under the ADA, precluding judgment on the pleadings. *Id.* The Court agrees that the Motion for Judgment on the Pleadings should be denied.

#### a. Plaintiff's Retaliation Claim Under the FMLA

To state a cause of action for retaliation under the FMLA, "an employee must allege that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001) (citing *Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir.2000)). In its answer, the City admits "that the Plaintiff took FMLA leave during the calendar year 2014." ECF No. [31] ¶¶ 12, 13. While the parties agree that taking FMLA leave is statutorily protected activity under the FMLA, Plaintiff's argument that Defendant has "admitted" that Mr. Sanchez "suffered an adverse employment decision" and "the decision was causally related to the protected activity" defy even a cursory

review of Defendant's Answer.   *Cf.* ECF No. [48] at 4–5 and ECF No. [31] ¶¶ 18, 22, 25, 60.

Plaintiff argues that Defendant "admits that there is a provision in the collective bargaining agreement that allowed for employees to obtain their jobs back," ECF No. [48] at 5, citing to Answer Paragraph 22, which reads: "Admitted that there is an agreement and that would speak for itself." ECF No. [31] ¶ 22.[1] Plaintiff states that Defendant "admitted in ¶ 25 of the [A]nswer that Plaintiff contacted the city, via Chief Hernandez, about employment and during the conversation Chief Hernandez brought up that Plaintiff has previously missed time for medical issues." ECF No. [48] at 5.   However, Paragraph 25 of the Answer reads: "Admitted that Plaintiff contacted the City about employment.   Otherwise, without knowledge and therefore denied." ECF No. [31] ¶ 25.   There is not a sufficient showing that no issue of material fact exists as to the adverse employment decision prong of Plaintiff's claim on a failure to rehire theory.

Plaintiff argues that "Defendant admits . . . [Plaintiff] suffered an adverse employment decision when he was forced to resign due to the unbearable conditions," citing Defendant's Answer ¶ 18.   Paragraph 18 the Complaint alleges that "[w]hen th[e] situation became unbearable, Plaintiff had no choice but to submit a letter of resignation on or about November 16, 2014 and seek other employment.   This constructive discharge became effective a few weeks later in December 2014." ECF No. [30] ¶ 18.   However, Paragraph 18 of Defendant's Answer reads in its totality: "Admitted that Plaintiff resigned.   Otherwise without knowledge and therefore denied." ECF No. [31] ¶ 18.   There is not a sufficient showing that no issue of material fact

---

[1] This agreement, the Collective Bargaining Agreement ("CBA"), is not before the Court on the Motion for Judgment on the Pleadings.   Defendant has attached Section 38 of the CBA to its Motion for Summary Judgment, ECF No. [50], and the Court considers that document only with respect to summary judgment.

exists as to the adverse employment action prong of Plaintiff's claim on constructive discharge grounds.

Taking the Answer in the light most favorable to Defendant and comparing the competing pleadings, Plaintiff is precluded from judgment on the pleadings under each theory. The discrepancies between Plaintiff's allegations and Defendant's admissions reveal material disputes of fact. Accordingly, judgment on the pleadings is inappropriate and Plaintiff's Motion is denied as to his FMLA claim.

**b. Plaintiff's Associational Disability Discrimination Claim Under the ADA**

Plaintiff's Motion for Judgment on the Pleadings as to his ADA claim suffers a similar fate. A plaintiff attempting to establish a *prima facie* case of "association discrimination" under the ADA must establish: (1) that she was subjected to an adverse employment action; (2) that she was qualified for the job at that time; (3) that her employer knew at that time that she had a relative with a disability; and (4) that "the adverse employment action occurred under circumstances which raised a reasonable inference that the disability of the relative was a determining factor in [the employer's] decision." *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001) (quoting *Hilburn v. Murata Electronics N. Am., Inc.*, 181 F.3d 1220, 1230–31 (11th Cir. 1999).

Once again, Plaintiff's arguments stretch the plain words of Defendant's Answer to their breaking point. Plaintiff claims that Defendant admits that it is undisputed that "[P]laintiff was qualified for the job at the time of the adverse employment action" based on Defendant's admission that Plaintiff resigned, had a collective bargaining agreement, and contacted the City about employment. ECF No. [48] at 6. Plaintiff also argues that Defendant knew that a member of Plaintiff's family, Plaintiff's son, was disabled and that the adverse employment action occurred

under circumstances which raise a reasonable inference that his son's disability was a determining factor in the employer's decision. Plaintiff bases this assertion on Paragraph 25 of Defendant's Answer which states: "Admitted that Plaintiff contacted the City about employment. Otherwise without knowledge and therefore denied." Taking the Answer in the light most favorable to Defendant and comparing the competing pleadings, there exist material issues of fact for each element of Plaintiff's associational ADA claim. As such, the Motion for Judgment on the Pleadings is denied as to the ADA claim.

## II. Motion to Strike

Defendant moves to strike Plaintiff's Declaration, ECF No. [62-1], in support of his Opposition to the City's Motion for Summary Judgment. In its Motion to Strike, the City argues that the affidavit contains information not based on Plaintiff's personal knowledge, information which contains hearsay, and information that directly contradicts Plaintiff's deposition testimony. The Court, having reviewed the Motion to Strike, Plaintiff's brief in opposition and the record before it, denies the City's Motion to Strike.

This Court has previously noted that "[a] party opposing summary judgment may not substitute an affidavit alleging helpful facts in place of earlier deposition testimony in hopes of avoiding summary judgment." *Rivero v. Midtown Towing of Miami, Inc.*, No. 13–CIV–22211, 2014 WL 12531510, at *3 (S.D. Fla. Dec. 8, 2014) (quoting *Moore v. Tractor Supply Co.*, 352 F. Supp. 2d 1268, 1275-76 (S.D. Fla. 2004) (striking plaintiff's affidavit "insofar as it is inconsistent with [p]laintiff's deposition testimony")). The Eleventh Circuit has provided instruction on this matter, noting that a court "*may disregard* an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by

deposition testimony . . . [as] [s]uch an affidavit would be a sham." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003) (emphasis added). "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). However, these cases do not indicate that sham affidavits will be stricken from the record, but rather indicate that the affidavit at issue should be "disregarded." *See also Aira v. Best Nat. Vending, Inc.*, 2012 WL 4935086 at *9–10 (S.D. Fla. 2012) (deciding that "to the extent [the] subsequent affidavit attempts to create a fact question . . . it is a sham and will not be considered," but never striking it from the record); *Pennant v. Convergys Corp.*, 368 F. Supp. 2d 1307, 1312 (S.D. Fla. 2005) (disregarding subsequent affidavit as a sham). In fact, when presented with this scenario, courts in this circuit repeatedly decline to strike such affidavits. *See, e.g., Dwyer v. Ethan Allen Retail, Inc.*, 528 F. Supp. 2d 1297, 1300 (S.D. Fla. 2007) (noting that the law in this Circuit permits a district court to "disregard" a sham affidavit, that is "to grant summary judgment . . . notwithstanding the existence of the sham affidavit; not to actually strike the sham affidavit and refuse to consider it at all"); *Breach v. Prison Health Servs.*, No. 2:06-CV-1133-MEF, 2008 WL 2959778, at *4 (M.D. Ala. July 31, 2008) (noting "a party cannot create a genuine issue of material fact at summary judgment with an affidavit that contradicts [prior testimony]," and that "[i]t is not the law of this Circuit that such an affidavit must be stricken"). Based on the foregoing, the Court declines to strike Plaintiff's affidavit. To extent an affidavit includes information not based on personal knowledge, information based on hearsay, or information that clearly conflicts with Sanchez's

sworn deposition testimony, the deposition testimony will be credited.

## III.    Motion for Summary Judgment

### A.  Legal Standard

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion.   *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).   Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. Pro. 56(a).   The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations.   *See* Fed. R. Civ. P. 56(c).   An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).   A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247–48).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party has met its burden, the non-movant must "go beyond the pleadings" and show that there is a genuine issue for trial.   *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. Pro. 56(c)(1).   To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986) (emphasis added). A movant must present evidence demonstrating that it can establish the basic elements of his claim. *Celotex*, 477 U.S. at 322. After the nonmoving party has responded to the motion for summary judgment, a court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Thus, "[a] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' " *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 249) (emphasis added).

As before the Court here, "cross motions for summary judgment may be probative of the nonexistence of a factual dispute, but this procedural posture does not automatically empower the court to dispense with the determination whether questions of material fact exist." *Georgia State Conference of NAACP v. Fayette Cty. Bd. of Comm'rs*, 775 F.3d 1336, 1345–46 (11th Cir. 2015). In particular, where "the parties respond[] to each respective summary judgment motion with disputes as to the 'undisputed' facts, add[] 'material facts' of their own, and then repl[y] with subsequent objections to the other party's additional facts," the mere filing of cross motions for summary judgment is not conclusive. *Id.* Thus, where the parties disagree as to the facts, summary judgment cannot be entered unless one of the parties meets its burden of demonstrating that "there is no dispute as to any material facts with the evidence and all inferences drawn therefrom viewed in the light most favorable" to the other party. *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983)

### C. Factual Background

In support of their respective motions for summary judgment, the parties have both

submitted statements of material facts, ECF Nos. [51] and [55], and have also filed opposing statements of material facts in response, ECF Nos. [60] and [62].   Based on these statements, as well as the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

The City employed Sanchez from July 2008 to December 2014 as a firefighter and paramedic.   ECF Nos. [51] ¶1, [55] ¶ 1, [60] ¶ 1, [62]¶ 1.   While employed by the City, Sanchez applied for and was granted FMLA leave when he and his wife underwent in vitro fertilization treatments beginning in November 2013.   ECF Nos. [55] ¶ 4, [60] ¶ 3; Deposition of Jimmy Sanchez, ECF No. [51-1] ("Sanchez Tr.") at 94–96, 105.   Sanchez's FMLA was "intermittent" leave, meaning that Plaintiff took off work one day at time.   Sanchez testified that sometime shortly after he applied for FMLA leave, his co-workers began making lewd, profane, and harassing comments and gestures about his FMLA leave during crew lunches, morning roll call, and other fire station gatherings.   Sanchez Tr. 106, 109–10, 118.   Sanchez testified that these comments and gestures were made by groups of employees, including both co-workers of equal rank and supervisors at multiple station houses, and that statements and gestures occurred "at least once every shift."   *See, e.g.*, Sanchez Tr. at 110–11, 128.   During an episode, a single comment would lead to the crew "jumping on the bandwagon" in a "group mentality" making the statements and gestures.   *See, e.g.*, Sanchez Tr. at 129.   Sanchez testified that:

> I would take my FMLA leave and then, I'm quoting what they would say, go home to f*** my wife and/or, well, why don't you just bring her here and we'll f*** her for you and get her pregnant. That was their belief of my FMLA, even though I lost children that year – I'm going to try to refrain from crying –and suffering harassment from them. When that was brought to Captain Fernandez's attention, Captain Dennison's (phonetic) attention, to have that refrained, to have that stopped from the personnel, nothing would – ever further happened nothing further

was ever taken action. I brought it to my superior officers. It just became more of a joke for them.

Sanchez Tr. 66–67; *see also id.* at 69, 92, 108, 100, 111–12, 114, 131, 203, 217.[2]  Sanchez testified that he could not remember specific dates, times, individuals who made the comments, except for Captain Robert Fernandez, Lieutenant Bennets, and individuals named Rolando Hernandez, Mo Martinez, and Falkenhagen (no first name identified). For example, in one exchange during his deposition, Sanchez testified:

> A: You're going to have to look 'cause it was–everybody was there. It was just–I wish I could I wish it was just one person like you–like you want me to tell you but it's not, it was just it was a whole group.   I can tell you who was not participating, that I can promise you about.   But these people were all participating.   These are on multiple occasions with my crew.
>
> Q: Any other names that you know?
>
> A: Off the top of my head, no, ma'am. I can – if I went down the list I have been so far long not there, you would have to see who was there on that bandwagon.
>
> ….
>
> Q: Are you saying, as you sit here today, you can't tell me, other than what we already talked about, what Rollie Hernandez said to you and when he said it to you?
>
> A: I wish I could give you more information on time and date of his exact time of saying these things and these people. The group of people – you have to understand, I keep repeating to my – for you, it's an [sic] bandwagon mentality. One person starts at the lunch table or one person starts at the lineup –
>
> Q: So who was the one person that started at the lunch table? Give me an example of one person that started it at the lunch table.
>
> A: I wasn't sitting there taking notes. I wish, I really do, 'cause I didn't plan on having this problem in my career.

---

[2] The transcripts before the Court appear to be uncorrected without phonetic name modifications.  Based on subsequent testimony and the motion papers, it appears that Sanchez claims he brought his complaints to three superior officers, Captain Fernandez, Battalion Chief Gains, and Chief Dejoris.  *See* Sanchez Tr. 115–116.

Q: So you don't remember, say at the lunch table, who started it and who joined in?

A: (No verbal response.)

Q: You don't have those names?

....

A: It wasn't just a one-person issue. It was a crew issue. It was a bandwagon thing. I wish I could give you more detail like you're asking, but that's—that's exactly what it was.

Sanchez Tr. at 130–134 (record objections omitted). Sanchez repeatedly testified that the City should look up the names of everyone on his crews in the "public record" because "a long list" of employees participated in the comments. *See, e.g.*, Sanchez Tr. at 129–131. He further testified that the reasons for his FMLA leave appeared to be "common knowledge" around the stations, but that he didn't know how that information was released as he considered it "private" and "privileged." *See e.g.*, Sanchez Tr. at 99–100, 107–08, 117, 128; ECF No. [60] ¶ 17. Sanchez complained about these statements to his superior officer Captain Fernandez, who also participated in the lewd, profane, and harassing comments and gestures (Sanchez Tr. at 111, 114, 117–18), as well as to Battalion Chief Gains and Chief Dejoris. *See, e.g.*, *id.* at 108–09, 115–16, 121. Sanchez testified that, when he confronted Fernandez, Fernandez apologized for participating in the harassing statements. Despite bringing the comments to the attention of his superior officers, the comments continued until he resigned in November 2014. Sanchez Tr. at 67, 135.

The parties disagree regarding what, if any, statements were made; which employees, including Sanchez's supervisors, made those statements; and which supervisors, if any, knew or heard about the statements. ECF Nos. [51] ¶27, 29–31, [55] ¶ 1, [60] ¶ 1, [62]¶ 1; ECF No.

[51-2], Deposition Transcript of John Picarello ("Picarello Tr.") at 25–26; ECF No. [51-3], Affidavit of John Picarello ("Picarello Aff."), ¶ 53; ECF No. [51-5], Affidavit of Jorge Hernandez ("Hernandez Aff.") at 50–52; ECF No. [51-6], Deposition of Battalion Chief David Joseph Gains ("Gains Tr.") at 17–18; ECF No. [51-7], Affidavit of David Joseph Gains ("Gains Aff."), ¶ 32; ECF No. [51-8], Deposition of Chief Ruben Tronsoco ("Tronosco Tr.") at 30–32; ECF No. [51-9], Affidavit of Ruben Danilo Tronsoco ("Tronosco Aff."), ¶ 34; ECF No. [51-10], Deposition of Daniel Rothstein ("Rothstein Tr."), at 28–29; and ECF No. [51-11], Affidavit of Daniel Aaron Rothstein ("Rothstein Aff."), ¶ 12–14. It is undisputed, however, that Sanchez did not file any written complaints regarding the harassment, keep notes of the incidents of harassment, or notify human resources, his union representatives, or any federal or state agency about the harassment while still employed at the City. Sanchez Tr. at 70, 135–36; ECF No. [51] ¶ 37–38 ECF No. [60] at 5; ECF No. [51-3], Picarello Aff., ¶ 52–53; ECF No. [51-5], Hernandez Aff. at 50–52; Gains Aff. ¶ 29–30; Tronsoco Aff. ¶ 28; Rothstein Aff. ¶ 11–12.

Sanchez further testified that after the "majority" of his FMLA leave days, the City would assign him to busier and less desirable stations or "trucks," namely B69 and B89, as "punishment." Sanchez Tr. at 74–75, 126, 138, 144, 154–62, 210, 218. Plaintiff testified that co-workers told him that Battalion Chief Hammel would brag about "punishing" Plaintiff by moving him to the busier trucks after he would take FMLA leave. Sanchez Tr. at 74, 127. Exhibits produced by the City indicate that Sanchez took sixteen FMLA days and was assigned to the two busiest trucks on a shift immediately subsequent to his FMLA leave five times. Picarello Aff. at ¶ 58; *see also* Exhibit C to Picarello Aff., ECF No. 51-3 at 8–13. On some occasions when Plaintiff would call the duty battalion chief about his station assignment, he would ask to be moved to a less busy truck

if he was assigned to B69 or B89. *See, e.g.*, Sanchez Tr. at 75, 83, 124–25, 141–47, 153–54. The City disputes that Sanchez's assignments were in retaliation for taking FMLA leave because (1) Sanchez was on "float crew," meaning he could be assigned to any truck based on staffing needs, (2) the busier trucks are not universally considered a form of punishment, and (3) assignment to the busier trucks included a 5% pay increase for that shift. *See, e.g.*, Picarello Tr. at 30–32; Gains Tr. at 33, 39–40. However, the parties do agree that once employees of the fire department become more senior they can "bid out" of busy stations. *See, e.g.*, Picarello Tr. at 32; Picarello Aff. at ¶56; Gains Tr. at 15–17, 33, 44.

The parties agree that Plaintiff spoke with Chief Gains about his resignation, but they dispute the content of that conversation. ECF Nos. [51] ¶ 2, [55] ¶ 2. On November 16, 2014, Sanchez submitted a resignation letter. Sanchez Tr. at 286; ECF No. [51] ¶ 1. The letter did not reference any of the alleged harassment or the alleged retaliatory assignments, but did reference Sanchez's plans to relocate outside of South Florida. *Id.* Sanchez's resignation was effective December 1, 2014. ECF Nos. [51] ¶ 1; [55] ¶ 1. At the time of his resignation, Plaintiff was in good standing, had received merit increases in pay each year, and had received satisfactory evaluations. ECF Nos. [51] ¶ 39, [55] ¶ 8. According to Plaintiff, he and his family did relocate after his resignation. Sanchez Tr. at 6–7.

Sanchez's son was born with a congenital diaphragmatic hernia. 2d Am. Compl. ¶ 19. Sanchez testified that his son qualifies as disabled under the ADA, and the City does not dispute that qualification. *See* Sanchez Tr. at 193–94. Sanchez testified that due to his son's medical needs, the family decided to move back to South Florida. Sanchez Tr. at 18. On September 8, 2015, Plaintiff spoke with Chief John Picarello and asked to return his former employment. ECF

Nos. [51] ¶¶ 3–4, [55] ¶ 10.   The parties agree that Picarello told Sanchez that the division chief of

training, Jorge Hernandez, would follow up with Plaintiff.   *Id.*; *see also* Hernandez Tr. at 8.   On

September 9, 2015, Chief Hernandez contacted Plaintiff to discuss returning to work.   ECF Nos.

[51] ¶ 5–6, [55] ¶ 11.   The parties agree that the health of Sanchez's family, including his son, was

discussed on the call.   ECF Nos. [51] ¶ 6, [55] ¶ 11.   According to the City, during this phone call

Hernandez told Sanchez that the City was in the middle of hiring a "class," a group of potential

employees who together go through the milestones of the hiring process, and that Sanchez would

have to wait until the next class to apply, which was scheduled for January.   ECF Nos. [51] ¶ 6.

According to Sanchez, the hiring process was not discussed at all.   Instead, Hernandez expressed

concern that Sanchez would be able to return to work given the needs of his son and told Sanchez

that Hernandez would "get back to him" about potential employment.   Sanchez Tr. at 168–70.

The parties thus dispute whether Hernandez expressed concern about Sanchez's ability to return to

work, whether Hernandez informed Sanchez about the status of the hiring class, and whether

Sanchez was instructed to re-contact the City in January or to wait for Hernandez to "get back to

him."   ECF Nos. [51] ¶ 6–8, 10; [55] ¶ 11.

The parties agree that there was no contact between the City and Sanchez regarding

returning to his job for nearly five months.   ECF Nos. [51] ¶ 13–14, [55] ¶ 12, [60] ¶ 12, [62] ¶ 15.

On February 29, 2016, Sanchez called Hernandez to again ask about reinstatement.   *Id.*   While

the parties agree that Sanchez's employment prospects were discussed on the phone call, the

parties disagree whether Sanchez's past FMLA leave and the health of his family was discussed.

ECF Nos. [51] ¶30, [55] ¶ 11, [60] ¶ 11, [62]¶ 15. The parties further disagree whether Hernandez

explained the status of the January hiring class, which Hernandez testified was at that time nearly

complete. ECF Nos. [51] ¶ 8, 24–25, [62] ¶ 8, 15, 24–25; *see also* Hernandez Tr. at 38–40.

On March 3, 2016, during a phone call between Chief Hernandez, Chief Ruben Tronosco, and Plaintiff, the City told Plaintiff that there were no positions available. ECF Nos. [60] ¶ 12, [62]¶ 15; Hernandez Tr. at 38. The parties dispute what else, if anything, was discussed on the phone call. *Id.*

On March 23, 2016, Plaintiff filed a Charge of Discrimination with the EEOC and the Florida Commission on Human Relations. The Charge was transferred to the U.S. Department of Justice Civil Rights Division, and the DOJ issued a Notice of Right to Sue on January 18, 2017. ECF Nos. [55] ¶ 14–15, [60] ¶ 14.

The Fire Department and the Fire Union held a Labor Management Meeting on April 6, 2016. ECF No. [51] ¶ 20. During that meeting the Union inquired whether Sanchez was eligible for rehire, pointing to Section 38.02 of Article 38, Seniority, of the Collective Bargaining Agreement. *See* ECF No. [51-5] at 13, Labor/Management Meeting April 6, 2016 – 0930 Minutes ("April 6, 2016 Meeting Minutes"). That provision reads, in relevant part:

> At the discretion of the Fire Chief, an employee who voluntarily resigns while in good standing has the right within two (2) years(s) from the date of his resignation to return to this former position without losing his accrued seniority provided that a vacancy exists or is created in a position that he previously held. . . . Said employee shall be required to meet the physical and medical standards required of all new employees by the Department. However, on the employee's anniversary, seniority and probationary dates will be adjusted by the amount of time not employed by the city since seniority does not accrue during that period.

ECF No. [51-1] at 10–11, Collective Bargaining Agreement Article 38, Seniority. Sanchez testified that during both his phone calls with the City in September 2015 and February 2016, he requested reinstatement under this provision. Sanchez Tr. 167–68. The City claims that this

provision was never raised during these phone calls. *See, e.g.*, Hernandez Tr. at 16–17. At the meeting between the Union and City, the City informed the Union that Sanchez was eligible for rehire, but that all available positions had been filled. April 6, 2016 Meeting Minutes at 13. According to the Minutes, the City told the Union that the next hiring class would be in October 2016, and that "[Sanchez] take appropriate actions and prepare himself to be able to compete with the other potential candidates and that he can contact us prior to the next hiring class." *Id.* It is undisputed that Sanchez did not contact the City or otherwise attempt to be rehired after this meeting. ECF No. [51] ¶ 22.

### D. Plaintiff's Motion for Summary Judgment

Plaintiff initially moves for summary judgment on both his retaliation claim under the FMLA and his discrimination claim under the ADA. For his retaliation claim under the FMLA, Plaintiff first argues that the parties do not dispute that Plaintiff was an eligible employee under the FMLA. Second, Plaintiff argues that under four different retaliation theories there is no genuine issue of material fact that Defendant engaged in adverse employment actions when it (1) disclosed confidential medical information subjecting Plaintiff to harassment; (2) gave Plaintiff less desirable work assignments; (3) constructively discharged Plaintiff due to harassment; and (4) failed to reinstate Plaintiff based on Section 30.02 of the CBA. Plaintiff does not appear to make specific arguments as to why no genuine issue of material fact exists regarding causation, the third element of his retaliation claim.

As to the ADA claim, Plaintiff moves for summary judgment arguing there is no genuine issue of material fact as to each of the four elements of an associational disability claim. ECF No. [54] at 8–9. Despite testimony from the City to the contrary, Plaintiff argues that there is no

dispute regarding the comments made by Chief Hernandez about the health of Plaintiff's child and whether caring for his child might be a distraction or require Sanchez to miss work. While Plaintiff lays out the four-element test required in this District to state a claim for associational discrimination under the ADA, in its moving brief Plaintiff does not specifically address the first three elements. *See id.* at 8–11.

In Opposition to Plaintiff's Motion for Summary Judgment, Defendant argues that—to the extent based on conduct that occurred while Sanchez was employed—the FMLA claim must be dismissed on statute of limitations grounds and that, even if the claim is timely, genuine issues of fact exist precluding summary judgment. Defendant observes that Plaintiff testified to several material facts regarding the specifics of the statements made and who at the City knew about that harassment, all of which are disputed by the City. *See* ECF No. [59] at 7. As stated by Defendant "[t]he only evidence that the Plaintiff has presented as to the alleged harassment is his own testimony." *Id.* Defendant further argues that Plaintiff has failed to rebut the City's articulated reasons for the alleged adverse employment actions.

As to the ADA claim, the City argues that Plaintiff cannot prove a *prima facie* ADA discrimination case, or in the alternative, that genuine issues of material fact exist precluding summary judgment. Similar to the FMLA claim, the City also argues that Plaintiff has failed to rebut the legitimate reasons articulated by the City for failure to rehire the Plaintiff.

In reply, Plaintiff withdraws in its entirety its Motion for Summary Judgment based on failure to rehire for both its ADA and FMLA claims, acknowledging that issues of fact preclude summary judgment. *See* ECF No. [65] at 8–11. Accordingly, the Court will only address Plaintiff's Motion for Summary Judgment on his FMLA retaliation claim based on release of

personal information that caused harassment, adverse work assignments, and constructive discharge.

### E.  Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on both of Plaintiff's claims.  Similar to Defendant's arguments in opposition to Plaintiff's Motion for Summary Judgment, Defendant argues that the FMLA claim—to the extent it is based on conduct during Sanchez's employment—is untimely on statute of limitations grounds.  However, in contrast to the City's arguments, the City argues inn its moving brief that there are no genuine issues of material fact as to Plaintiff's FMLA and ADA claims and that the City is entitled to judgment as a matter of law on both.  Specifically as to the FMLA claim, the City argues that Plaintiff "cannot prove an adverse employment action while employed by the City," that "Plaintiff cannot prove that the City's failure to rehire was casually connected to his prior FMLA leave," and Plaintiff has not refuted the legitimate reasons articulated by the City for not rehiring the Plaintiff.  ECF No. [50] at 13.  For the ADA claim, Defendant argues that there are no genuine issues of material fact regarding the ADA claim because there is no evidence, beyond Plaintiff's testimony, that the City was aware of Plaintiff's son's condition, and that the City had legitimate, non-discriminatory reasons for not rehiring Plaintiff.  *Id.* at 19.

### IV.   Analysis

#### A.  Plaintiff's Claims Based on Failure to Rehire Under the ADA and FMLA

Plaintiff alleges two claims based on failure to rehire, one sounding under the ADA and one sounding in the FMLA.  While both Plaintiff and Defendant initially moved for summary judgment on the claims based on failure to rehire, as noted above, Plaintiff has withdrawn its

Motion for Summary Judgment on the failure to rehire claim. ECF No. [65] at 8. Accordingly, the Court will address only Defendant's Motion for Summary Judgment on the failure to rehire claims.

To establish a claim of "association discrimination" under the ADA, a plaintiff must demonstrate: (1) that he was subjected to an adverse employment action; (2) that he was qualified for the job at that time; (3) that his employer knew at that time that he had a relative with a disability; and (4) that "the adverse employment action occurred under circumstances which raised a reasonable inference that the disability of the relative was a determining factor in [the employer's] decision." *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001) (quoting *Hilburn v. Murata Electronics N. Am.*, Inc., 181 F.3d 1220, 1230–31 (11th Cir. 1999); *see also* 42 U.C.C. § 12101 et seq. "A family relationship is the paradigmatic example of a relationship under the association provision of the ADA." *Atkinson v. Wiley Sanders Truck Lines, Inc.*, 45 F. Supp. 2d 1288, 1292 (M.D. Ala. 1998), *aff'd sub nom. Atkinson v. Wiley Sanders Truck*, 189 F.3d 486 (11th Cir. 1999) (citations omitted). To qualify as an "adverse employment action" under the ADA, "[a]n ADA plaintiff must demonstrate that a reasonable person in his position would view the employment action in question as adverse." *Doe v. Dekalb Cty. Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998). Thus, "not every unkind act amounts to an adverse employment action. *Id.* (quoting *Wu v. Thomas*, 996 F.2d 271, 273 n.3 (11th Cir. 1993) (internal quotation marks omitted).

To establish a *prima facie* case of FMLA retaliation, a plaintiff must show that "(1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was casually related to a protected activity." *Pereda v. Brookdale Senior Living*

*Communities, Inc.*, 666 F.3d 1269, 1275 (11th Cir. 2012). "[T]o succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001) (citations omitted). As such, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions "were motivated by an impermissible retaliatory or discriminatory animus." *Id.*

For both FMLA and ADA claims, the burden shifting framework applies as articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Smith v. BellSouth Telecomm.*, *Inc.*, 273 F.3d 1303, 1314 (11th Cir. 2001) (applying *McDonnell Douglas* to FMLA claim); *Atkinson*, 45 F. Supp. 2d 1288, 1293 n.5 (applying *McDonnell Douglas* to ADA associational discrimination claim). "If the plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a legitimate reason for the adverse action." *Smith*, 273 F.3d at 1314. "If the defendant does so, the plaintiff must show the defendant's proffered reason for the adverse action is pretextual." *Id.* Pretext means that the reason given by the employer was not the real reason for the adverse employment decision. *Wood v. Calhoun Cty. Florida*, 626 F. App'x 954, 956 (11th Cir. 2015). A plaintiff need not produce additional, independent evidence of discrimination to show prextext. Rather, the burden can be met on summary judgment by attacking the credibility of a defendant's proffered reasons for the adverse employment action and showing those reasons to be false. *Spakes v. Broward Cty. Sheriff's Office*, No. 06-61471-CIV, 2007 WL 9653286, at *7 (S.D. Fla. Oct. 31, 2007) (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147–48 (2000)).

Here, while the Court has serious doubts that Plaintiff can demonstrate an "adverse employment action" based on failure to rehire for a job he never applied to, even if Plaintiff can make out a *prima facie* case for retaliation under the FMLA or discrimination ADA based on failure to rehire, the City has raised legitimate non-discriminatory reasons for not rehiring Plaintiff that not only fulfill its burden of production but require summary judgment in favor of the City.   It is undisputed that Plaintiff only made two phone calls over a five month period inquiring about rehiring.   It is further undisputed that after he resigned, Plaintiff never applied for a position with the City, never tried to join an incoming "class" of new hires, and never underwent any medical or physical testing.   Minutes from the meeting between Union and the City where Plaintiff's rehiring was discussed reflect that the City advised that Plaintiff was eligible for rehire, but that he must take "appropriate actions and prepare himself to be able to compete with the other potential candidates and that he can contact us prior to the next hiring class."   April 6, 2016 Meeting Minutes at 13.   There is no evidence in the record that Plaintiff ever did so.

In opposition to Defendant's Motion for Summary Judgment, Plaintiff has not produced any evidence that the City's reason—that Plaintiff failed to timely apply for the position he sought—is pretextual.   Plaintiff argues that there are material issues of fact regarding whether the City requires rehires to undergo additional testing or the same testing as new recruits.   Included in Plaintiff's reply in support of his Motion for Summary Judgment is an affidavit from his father, a retired firefighter, which states that Sanchez, Sr., remembers that the City would rehire former firefighters without additional training.   *See* ECF No. [65-1].   However, even if that were true, according to Plaintiff, the City never informed Sanchez of any hiring practices and the status of the new hire class on his phone calls.   Rather, Plaintiff claims that in September 2014 the City only

informed him that it would "get back to him" regarding job opportunities, the City never did so, and Plaintiff waited five months to follow up with the City, by which point the City told him that all positions were filled. Crediting Plaintiff's own testimony and taking the evidence in the light most favorable to Plaintiff, Sanchez cannot sustain a failure to rehire claim under either the ADA and the FMLA based on two calls where he simply inquired about job openings, without more.

Finally, the CBA's provisions on seniority does not save Sanchez's claims. While the parties dispute what training, if any Plaintiff must complete prior to rehire, the plain language of the contract belies Sanchez's arguments. First, the CBA does not provide an absolute right to rehire without any training, physical or medical examinations, or approval from the Fire Chief. Rather, the provision allows for an employee, once rehired, to retain seniority achieved prior to resignation *at the discretion of the fire chief* and once that employee has "*[met] the physical and medical standards required of all new employees by the Department*." ECF No. [51-1] at 10–11 (emphasis added). Thus, taking Plaintiff's claims in the light most favorable to Plaintiff on Defendant's Motion for Summary Judgment, the Court finds that no reasonable trier of fact could find for Plaintiff on his claims based on failure to rehire. Accordingly, summary judgment is granted in favor of Defendant on Plaintiff's ADA claim and Plaintiff's FMLA claim based on failure to rehire.

### B. Plaintiff's Claims Based on Harassment and Adverse Work Assignments

Plaintiff claims that he was retaliated against when shortly after taking FMLA leave, co-workers and supervisors began making lewd, profane, and harassing comments and gestures about the reasons for his FMLA leave and supervisors began assigning Plaintiff to less desirable shifts. Plaintiff offers three theories of adverse employment action to make out his retaliation

claim under the FMLA: release of personal medical information related to his FMLA leave, reassignment to busier and less desirable stations after taking FMLA leave, and constructive discharge based on the harassing statements and gestures from co-workers and supervisors.

For an action to qualify as an "adverse employment action" under the FMLA, courts in this Circuit have applied the standard articulated in *Burlington Northern*: "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); *see Foshee v. Ascension Health–IS, Inc.*, 384 Fed. App'x 890, 891–92 (11th Cir. 2010) (per curiam) (assuming, without deciding, that the "material adversity" standard of *Burlington Northern* applies to retaliation claims under the FMLA); *DuChateau v. Camp Dresser & McKee, Inc.*, 822 F. Supp. 2d 1325, 1339 (S.D. Fla. 2011), *aff'd*, 713 F.3d 1298 (11th Cir. 2013) (applying the *Burlington Northern* standard); *Holtrey v. Collier Cty. Bd. of Cty. Commissioners*, No. 2:16-CV-00034-SPC-CM, 2017 WL 119649, at *3 (M.D. Fla. Jan. 12, 2017) (same).

Both parties move for summary judgment, arguing that no genuine issues of material fact exist and summary judgment is warranted in their favor. The Court has reviewed the parties' briefs and all supporting and opposing filings, and finds that genuine issues of material fact preclude summary judgment.

### a. Willfulness

As a threshold issue in its moving brief and on opposition to Plaintiff's Motion for Summary Judgment, Defendant argues that Sanchez's FMLA claim based on conduct while he was employed by the City is time barred. The statute of limitations for a claim under the FMLA generally is two years. 29 U.S.C. § 2617(c)(1). A three-year statute of limitations applies,

however, if the alleged violation is willful. *Id.* § 2617(c)(2). "While the FMLA does not define 'willful,' and the Supreme Court and the Eleventh Circuit have not interpreted the meaning of 'willful' in the FMLA context, other circuit courts have interpreted 'willful' to mean where the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FMLA].' " *Copeland v. Metro. Atlanta Rapid Transit Auth.*, No. 1:08–CV–1300–WSD–ECS, 2010 WL 11500065, at *5 (N.D. Ga. Oct. 8, 2010) (collecting cases).

Plaintiff testified that he was unaware how details of his private medical information were released to his co-workers; that his co-workers, including supervisors, made lewd, profane, and harassing comments and gestures about his FMLA leave while in his presence; and that he complained to three supervisors verbally about the conduct. In response, the City argues that there is no evidence of the comments or gestures and no written complaints, and that Plaintiff's supervisors testified that they did not witness the comments or gestures being made, never personally participated in them, and did not know of any written complaints about the comments or gestures. Taking the evidence in the light most favorable to the Plaintiff on Defendant's Motion for Summary Judgment, however, genuine issues of material fact exist regarding whether Defendant knew or participated in the complained of harassment such that a fact finder may be able to conclude that the City's conduct meets the willfulness standard applicable to the FMLA. Accordingly, the City's Motion for Summary Judgment on the basis of statute of limitations is denied.

### b. Plaintiff's Claims Based on Revealing Personal Medical Information

Both parties move for summary judgment on Plaintiff's claim that the City retaliated against him for taking FMLA leave by revealing his personal information to his co-workers.

However, disputes in the parties' material statements of fact, depositions, and other material in support of the motions for summary judgment require denial of both motions. While the parties agree that Plaintiff is an eligible employee under the FMLA and his request for FMLA leave was approved by the City, they disagree on whether the City inappropriately revealed Sanchez's personal medical information, including the reasons for his FMLA leave, to his coworkers, or whether Sanchez's own discussions with his co-workers revealed this information. Plaintiff testified that he considered the reasons for his FMLA leave personal and private, and only discussed the reasons for his FMLA leave with superior officers after the harassing comments and gestures began. Plaintiff also testified that he did not discuss "in detail" the reasons for his leave with his co-workers.

The City in its Opposition to Plaintiff's Motion for Summary Judgment does not appear to refute that the medical information was released nor has it produced evidence regarding what confidentiality procedures, if any, were followed related to Sanchez's FMLA leave. Rather, the City argues that there is no evidence beyond Plaintiff's testimony to support the allegations of *harassment* and suggests that Plaintiff revealed the information relating to his FMLA leave during his own conversations with co-workers. Since a reasonable employee might be dissuaded from seeking FMLA leave if the employee knew the City might reveal details of the medical reasons for the leave to other co-workers, and material issues of fact exist regarding whether the City released Sanchez's medical information and whether Sanchez made statements to his co-workers regarding his leave, summary judgment is inappropriate. *See Holtrey*, 2017 WL 119649, at *3 (denying motion to dismiss retaliation claim based on allegations that the employer disclosed confidential medical information to employee's co-workers resulting in harassment). Thus, the Court denies

both Plaintiff's and Defendant's Motions for Summary Judgment on the FMLA retaliation claim due to the disclosure of personal information.

### c. Plaintiff's Claims Based on Adverse Work Assignments

Plaintiff's second theory of FMLA retaliation is based on adverse work assignments. According to Plaintiff's testimony, the "majority" of the time he returned from FMLA leave, he was assigned to stations B69 and B89 that were considered less desirable. In particular, Plaintiff alleges that Chief Hamel used these assignments as a form of "punishment" for taking FMLA leave. Again, the record contains conflicting testimony regarding the desirability of assignment to these stations and whether assignment to those stations was considered a form of "punishment." However, the parties agree that Plaintiff was assigned to a "float" crew, meaning that he could be assigned to any station house given staffing needs, and that Sanchez was compensated an additional 5% per the CBA for shifts at B69 and B89. During his deposition Sanchez was examined on his 2009 and 2010 bid forms where he expressed preferences for B69 and B89 crew assignments. Other co-workers testified that they preferred assignment to B69 and B89 because of the high volume of calls. While Defendant argues that Plaintiff, on more than one occasion, included B69 and B89, Sanchez testified that he "had" to include these selections based on lack of seniority, and the parties agree that more senior firefighters would try to "bid out" of B69 and B89. Moreover, the record reflects the existence of additional bid forms from 2012 – 2014 where Sanchez ranked those assignments as less preferable. Accordingly, taking the evidence in the light most favorable to Defendant on Plaintiff's Motion for Summary Judgment, there are genuine issues of fact regarding whether Plaintiff's work assignments were retaliatory in nature. Taking the same evidence in the light most favorable to Plaintiff, there also remain genuine issues of fact

regarding whether these work assignments were retaliatory. Accordingly, both Plaintiff's and Defendant's Motions for Summary Judgment the FMLA retaliation claim based on adverse work assignments is denied.

### d. Plaintiff's Claims Based on Constructive Discharge Due to Harassment

Plaintiff alleges that the City retaliated against him for taking FMLA leave such that he was constructively discharged. "An employee has been constructively discharged when her employer 'imposes working conditions that are so intolerable that a reasonable person in the employee's position would have been compelled to resign.' " *Foshee*, 384 F. App'x at 892 (quoting *Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003)). While the parties agree that Plaintiff is an eligible employee under the FMLA and his request for FMLA leave was approved by the City, they disagree on nearly every other material fact related to the alleged harassment. The parties disagree about what statements, if any, were made; how pervasive the harassment was, if it existed at all; and what steps Plaintiff took, if any, to notify his supervisors. While the parties agree that Plaintiff later attempted to be rehired by the City, Plaintiff testified that he was willing to return in order to retain his seniority and to best provide for his family. Thus, despite the parties' cross motions for summary judgment, the record before the Court is a textbook example of genuine issues of material fact precluding summary judgment. Accordingly, both Plaintiff's and Defendant's Motions for Summary Judgment on the constructive discharge claim under the FMLA are denied.

### V. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Judgment on the Pleadings, ECF No. [48], is **DENIED**;

2. Defendant's Motion to Strike, ECF No. [63], is **DENIED;**

3. Plaintiff's Motion for Summary Judgment, ECF No. [54], is **DENIED;**

4. Defendant's Motion for Summary Judgment, ECF No. [50], is **GRANTED IN PART** and **DENIED IN PART.**

**DONE AND ORDERED** in Chambers at Miami, Florida this 2nd day of November, 2017.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record